In the Matter of the Estate of JOHN W. CLARK, Deceased.

Surrogate's Court, Kings County, March 16, 1938.

*Prince & Loeb,* for the Chase National Bank of the City of New York, Tessie D. Levy and Sidney J. Loeb, as executors and trustees, petitioners.

*Fox & Wintner* [*Hugo Wintner* of counsel], for the widow, Mary M. Clark, objectant.

*Jacob H. Livingston,* special guardian for Joel L. Mondelbaum, Ruth S. Steiner, Natalie R. Shulman and Leon P. Shulman, infant legatees.

*Chadbourne, Wallace, Parke & Whiteside,* for George Clark, residuary legatee.

*Martin J. Maher,* for John M. Cord, and others, objectants with respect to the corporate franchise tax.

WINGATE, S. The questions here submitted for decision are raised by the petition of the executors for a construction of the will and by the objections interposed by the widow and by certain legatees who purchased the testator's incorporated business. The majority are pure questions of law which have been submitted for determination without oral argument upon the briefs of the affected parties. They will be considered in the following order, *first,* the contention of the widow that she is entitled to receive $2,500 outright pursuant to the provisions of paragraph " (b) " of subdivision 1 of section 18 of the Decedent Estate Law; *second,* the objection of the widow to the assertedly expressed intention of the executors to pay out of estate funds the estate tax assessed in respect of an *inter vivos* trust erected for the benefit of Tessie D. Levy; *third,* the objection of the widow that the payment to the executors as individuals of sums of $106.66 each, representing costs awarded by the Court of Appeals was improper and that such costs are an asset of the estate; *fourth,* the preferences in payment and order of abatement of the gifts made in the " fifth " item of the will; and *fifth,* the objection by the purchasers of the decedent's incorporated business based on the failure of the executors to pay corporation taxes aggregating $624.71 assessed against the corporation.

The will erected a trust for the life benefit of the widow from one-half of the net estate but gave her no outright pecuniary bequest. According to the terms of the document, the trustees were not limited to legally authorized investments and were granted broad discretionary powers. The will was admitted to probate on February 10, 1936. Under date of February 13, 1936, the widow asserted her election under section 18 of the Decedent Estate Law " to take my share of the estate of John W. Clark as in intestacy against the provisions of said Will and Codicil."

This court passed upon the question of the validation of this asserted right a few months later. It deemed itself bound by the determination of the Appellate Division of this Department in *Matter of Curley* (245 App. Div. 255; affd., 269 N. Y. 548), which

had unequivocally held in its modification of the previous contrary decision by this court (*Matter of Curley*, 151 Misc. 664), that where a will authorized investment of the trust for a widow in other than legally authorized investments, and accorded the fiduciaries discretionary powers as broad as those herein incorporated, the benefit given was not such as to defeat her right to take in contravention of the terms of the will pursuant to the provisions of section 18 of the Decedent Estate Law. Reluctantly and constrained by *vis major*, this court accordingly felt compelled to, and did, uphold the right of the widow to take as in intestacy. (*Matter of Clark*, N. Y. L. J. May 28, 1936, p. 2741.) That its interpretation of the thought of its immediate judicial superior, as expressed in the *Curley* case, was correct, is demonstrated by the fact that this decision was unanimously affirmed by the Appellate Division (249 App. Div. 845). The executors, however, obtained leave to appeal to the Court of Appeals which (*Matter of Clark*, 275 N. Y. 1) repudiated the implications generally attributed to its affirmance without opinion of the Appellate Division decision in the *Curley* case and determined that any will, no matter what the latitude of investment or purported executorial authority accorded, which erected, for the benefit of the widow, " a trust in substance as well as form " and which apparently would yield a reasonable income in proportion to its avails, was sufficient to preclude the assertion by a surviving spouse of the right to take in contravention of its terms, as in intestacy.

The privilege of the present widow to take half of the estate outright having thus finally been determined in the negative, she now asserts her right to receive the limited sum of $2,500 authorized by paragraph " (b) " of subdivision 1 of section 18 of the Decedent Estate Law in those cases in which no outright gift is made to the surviving spouse in the will.

The executors contest this right on two grounds, *first*, because the widow moved in the Court of Appeals to amend the remittitur so as to specify that she was entitled to take $2,500 outright, which motion was denied on November 23, 1937; and, *second*, for the reason that her original notice of election asserted merely a right to take her entire share as in intestacy and more than the six months' period specified in subdivision 7 of section 18 of the Decedent Estate Law within which an election must ordinarily be made, has now expired.

The court deems the former of these two objections untenable. It is apparently based upon a substantial equivalent of the doctrine of *res adjudicata*, which is unsupported by the record. The only controversy litigated in the original proceeding in this court con-

cerned the question of whether or not the widow was entitled, by reason of alleged infirmities in the will, to receive one-half of the estate outright. No question respecting a lesser right was presented or considered. So far as disclosed in the record or in the opinions in the appellate courts, the same condition prevailed there. Orderly procedure would require that the appellate courts should not pass upon potentially different issues not considered below. The denial of the motion by the Court of Appeals is, therefore, properly construable as no more than a refusal to determine in the first instance a question properly the subject of preliminary decision at *nisi prius*.

Examination of the merit of the second basis of defense of the executors accordingly becomes necessary. Section 18 is expressive of a State policy to the effect that over his or her protest, a surviving spouse shall not be deprived of a specified minimum participation in the estate of a predeceased husband or wife. So far as the widow is concerned, the elective right accorded is in substitution for the immemorially favored right of dower. It has, accordingly, been the natural and uniform decision of the courts that on behalf of a surviving spouse coming within the description of the enactment, its provisions are to be liberally construed. (*Matter of Greenberg*, 141 Misc. 874, 885, 886; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Sitkin*, 151 Misc. 448, 456; *Matter of Brown*, 153 id. 282, 287; *Matter of Bommer*, 159 id. 511, 520; *Matter of Simeone*, 141 id. 737, 746. See, also, *Matter of Byrnes*, Foley, S., 141 id. 346, 350; affd., 235 App. Div. 782; affd., 260 N. Y. 465.)

The statute accords the elective right in varying degrees to surviving spouses answering a specified description, in carefully enumerated situations, prescribing only that " an election under this section * * * must be made within six months from the date of the issuance of letters testamentary " except in indicated situations. The purpose of this requirement is obvious and is merely to assure timely notice to those charged with the administration of the estate that the surviving spouse is dissatisfied with the terms of the will and asserts the additional right accorded by the statute, thus enabling them to be on their guard against any mode of dealing with the assets in their charge which does not take into consideration the statutory rights of the elector. The statute is significantly silent on the subject of the form of such notice, wherefore any which accomplishes this obvious purpose would seem sufficient. Any other construction of the statute would tend to circumscribe its beneficent purpose and to condition its operation upon inconsequential technicalities wholly foreign to its

intended purpose and entirely unnecessary for the attainment of the end sought by the requirement of notice.

In the opinion of the court, all which is requisite for a valid assertion of rights is that the notice state in substance or by fair intendment that the surviving spouse lays claim to the rights accorded by section 18 of the Decedent Estate Law, and that any additional specification is to be deemed immaterial surplusage. Whether or not such a doctrine should prevail in a situation in which the spouse had claimed less than that to which she was entitled, may well be left for future determination. It is not inconceivable that under such circumstances considerations of waiver or estoppel might intrude. In the present instance, however, there is no such complication. Here the widow asserted her right to receive in absolute possession one-half of the net assets of the estate, which, for purposes of illustration, will be assumed to have been $100,000. The Court of Appeals has decided that she is not, under the terms of the statute, entitled to $100,000. She is, however, by reason of the provisions of subdivision (b) entitled to an outright gift of $2,500. To assert that she did not lay claim to the lesser amount by reason of her demand for the greater, is obviously fallacious. The whole is but the sum of its several parts. No prejudice can be asserted by the executors by reason of her mistaken assertion of the right to recovery of a greater sum than that to which she was entitled and since the Legislature has demonstrated its intent that, if seasonably demanded, she should have the lesser, it should be awarded to her.

The second issue which has been attempted to be raised is referred to only in the objections of the widow and in the memoranda submitted by certain parties. As disclosed by the former, it reads in part " that the accountants have asserted their intention " to pay estate taxes assessed against an *inter vivos* trust erected by the decedent for Tessie D. Levy from the trust for the widow. No such expression is found in the account or in any other part of the record. So far as is disclosed no action in this regard has been taken. Any question as to the propriety of such a course of action is, therefore, academic and is not proper of present determination. (*Matter of Mount*, 185 N. Y. 162, 170; *Matter of Franklin Trust Co.*, 190 App. Div. 575, 577; *Matter of Dewint*, 161 Misc. 398, 403.)

The final objection of the widow is directed against the act of the accountants in paying to themselves, as individuals, costs awarded by the Court of Appeals pursuant to its order made on a reversal of the decree sustaining the general right of election of the widow. This order provided in part: " Ordered, that Sidney J. Loeb, the Chase National Bank and Tessie D. Levy, the Executors

and Trustees, Appellants, do recover the sum of $320, costs as taxed and that said sum of $320 be paid to the said Sidney J. Loeb, the Chase National Bank and Tessie D. Levy, executors and trustees, Appellants, out of the estate as aforesaid."

The directions of this order should be interpreted in the light of the limitations upon the authority of any tribunal, including the Court of Appeals, to award judgment for any sum, including costs, in an action or proceeding. An indispensable condition precedent to a valid adjudication of any variety is jurisdiction. This may of course be obtained either by service of process or by voluntary appearance but unless obtained in some manner, any adjudication affecting a person not a party is *coram non judice*, and void.

It is primary that a fiduciary acting in his representative capacity is a different person for juridical purposes from the same person in his individual capacity. (*Rathbone* v. *Hooney*, 58 N. Y. 463, 467; *Collins* v. *Hydorn*, 135 id. 320, 324, 325; *Leonard* v. *Pierce*, 182 id. 431, 432; *Pardee* v. *Mutual Benefit Life Ins. Co.*, 238 App. Div. 294, 296, 297; *Opdyke* v. *Marble*, 44 Barb. 64, 68; *Matter of Ebbets*, 149 Misc. 260, 267; *Matter of Ferber*, id. 840, 842; *Matter of Gomez*, 160 id. 503, 506.) It must follow from this fact that any judgment against a person in his fiduciary capacity would be void if jurisdiction over him had been obtained only as an individual and *vice versa*. Conversely, as the court could not make a valid award against a person of whom jurisdiction had not been obtained, and who was not before it, so it would be beyond its authority to make an affirmative award in favor of any such person. This principle is inherent in the provisions of section 283 of the Surrogate's Court Act which regulates the question of costs on appeals from the Surrogate's Court. It is there provided that " the appellate court may award to the successful *party* the costs of the appeal * * * the costs may be made payable out of the estate or fund, or personally by the unsuccessful party, as directed by the appellate court." (Italics not in original.) The point is that no authority exists for the award of costs except " to the successful *party*."

In the proceeding in which the costs in question were awarded, the only *parties* were the widow and Sidney J. Loeb, Chase National Bank and Tessie D. Levy " *as Executors and Trustees* under the Will of John W. Clark, deceased." Sidney J. Loeb, Chase National Bank and Tessie D. Levy, as individuals, were not parties, wherefore the Court of Appeals possessed no authority to award them, *individually* any costs of the proceeding as it had no jurisdiction over them as individuals. Its intention must obviously have been to do only that which was legally permissible, wherefore it must have been intended, as indeed, is stated, to award such costs to

them only in their representative capacity, rendering their personal appropriation thereof improper.

In view of the noted limitation on the power of the court, the argument from the fact that the fiduciaries may already have reimbursed themselves from the assets of the estate for the expenses of the proceeding loses weight. The order of the Court of Appeals supplied a *pro tanto* judicial justification of their previous act in this regard. This objection of the widow must, accordingly, prevail.

The fourth, hereinbefore enumerated, question requires a construction of the will to determine the testamentary intent in respect of preference and abatement in the gifts made. The questions propounded concern the gifts included in the "fifth" item of the will which purports to make disposition of the one-half of the estate not erected into the life trust for the widow.

The presently effective gifts made by the "fifth" item, as modified by the codicil, were as follows: (a) The erection of a trust in a sum sufficient to yield an annual income of $750 for life for John Clark; "(b)" to "(d)," inclusive, general legacies aggregating $12,000 to three named persons; (e) $25,000 to Tessie D. Levy. In respect of this gift it should be noted that the codicil directed that "this bequest is to be preferred over all others herein provided for and shall be paid in full before payment is made of or on account of any other bequest contained herein." (f) (revoked by codicil); "(g)" to "(m)" general bequests totaling $12,000 to seven identified legatees; (n) (revoked by codicil); (o) $1,000 to John Connolly; (p) "In the event that the legacies provided under Items '(b)' to '(o),' inclusive of this paragraph shall exceed one-half of my net estate after the deduction of debts, administration expenses and any estate tax, then and in that event each of said legacies shall abate proportionately;" (q) "all of my furniture, jewelry, rugs, clocks, paintings, household effects of every kind and character, automobiles, clothing and all other personal effects" to Tessie D. Levy; (r) residence at 131 Hastings street to Tessie D. Levy; (s) "All the rest residue and remainder of said one-half of my net estate" to George Clark and Tessie D. Levy in equal shares.

As was noted by this court in its opinion in *Matter of Smallman* (138 Misc. 889), determinations of a right to distributive priority are customarily predicated on one or another of four considerations, namely, *first*, express testamentary direction to that effect (*Matter of Lloyd*, 166 App. Div. 1, 7; *Morse* v. *Tilden*, 74 id. 132, 136; *Orton* v. *Orton*, 3 Abb. Ct. App. Dec. 411, 415; *Matter of Morris*, 227 N. Y. 141, 144; *Matter of Frankenheimer*, 195 id. 346; *Matter of*

*Crouse*, 244 id. 400, 404; *Wechsler* v. *Drey*, 203 App. Div. 692; *Matter of Brundage*, 101 Misc. 528, 534; affd., *sub nom. Matter of Farmers' L. & T. Co.*, 186 App. Div. 722; modfd. on other grounds, 226 N. Y. 691; *Shethar* v. *Sherman*, 65 How. Pr. 9, 14; *Matter of Van Brunt*, 159 Misc. 105, 110); *second*, because the legatee is deemed a quasi purchaser by reason of a testamentary requirement for surrender of some right in return for the gift, as a waiver of dower (*Isenhart* v. *Brown*, 1 Edw. Ch. 411, 413; *Orton* v. *Orton*, 3 App. Ct. App. Dec. 411, 415; *Stimson* v. *Vroman*, 99 N. Y. 74, 80; *Meyer* v. *Cahen*, 111 id. 270; *Bliven* v. *Seymour*, 88 id. 469, 475; *Dunning* v. *Dunning*, 82 Hun, 462, 466; affd., 147 N. Y. 686; *Williamson* v. *Williamson*, 6 Paige, 298, 305; *Rowe* v. *Lansing*, 53 Hun, 210, 212; *Matter of Rothman*, 140 Misc. 597, 598; *Matter of Helliesen*, 149 id. 184, 188) or non-enforcement of a claim or indebtedness (*Wood* v. *Vandenburgh*, 6 Paige, 277, 284; *Cole* v. *Niles*, 3 Hun, 326, 328; *Matter of McKay*, 5 Misc. 133, 126; *Matter of Woodbury*, 40 id. 143, 148; *Matter of Schaaf*, 120 id. 292, 293; *Matter of Sharff*, 143 id. 447, 449); *third*, where the gift is made to a dependent, for whom other provision is absent (*Matter of Neil*, 238 N. Y. 138, 140; *Matter of Gibson*, 166 App. Div. 1, 7; *Petrie* v. *Petrie*, 7 Lans. 90, 97; *Stewart* v. *Chambers*, 2 Sanfd. Ch. 382, 393; *Scofield* v. *Adams*, 12 Hun, 366, 369, 370; *Matter of Morss*, 164 Misc. 761, 764; *Matter of Rae*, 140 id. 530, 532), and *fourth*, from the form of the gift, specific bequests ordinarily being preferred to general legacies (*Taylor* v. *Dodd*, 58 N. Y. 335, 345; *Toch* v. *Toch*, 81 Hun, 410, 414; *Farmers' L. & T. Co.* v. *McCarthy*, 128 App. Div. 621, 623; *Matter of Rothman*, 140 Misc. 597, 598; *Matter of Helliesen*, 149 id. 184, 187; *Matter of Tuozzolo*, 141 id. 251, 252; *Matter of Gavey*, 147 id. 332, 334), and the latter, to residuary gifts (*Stewart* v. *Chambers*, 2 Sanfd. Ch. 382, 393; *Buffalo L. & T. Co.* v. *Leonard*, 154 N. Y. 141, 146; *Farmers' L. & T. Co.* v. *McCarthy*, 128 App. Div. 621, 625; *Wetmore* v. *St. Luke's Hospital*, 56 Hun, 313, 317; *Matter of Warschauer*, 136 Misc. 433, 435; *Maynard* v. *Maynard*, 108 id. 362, 367; *Matter of Ham*, 123 id. 889, 894; *Title Guarantee & Trust Co.* v. *Ebaugh*, 184 N. Y. Supp. 351, 352, not otherwise reported; *Matter of Mead*, 145 Misc. 893, 897; *Matter of Gavey*, 147 id. 332, 335; *Matter of Jacobs*, 154 id. 362, 363).

The first and last enumerated principles are obviously applicable to the terms of the present will. The gift of $25,000 to Tessie D. Levy in subdivision " (e) " is entitled to preference over all the other bequests since the testator has expressly so directed. The specific bequests and devise to her in subdivisions " (q) " and " (r) " are likewise to be preferred to the remaining legacies as they are specific and the others, with the exception of that contained in " (s),"

which is residuary, are general. These conclusions are not seriously questioned by any party to the proceedings.

The real controversy concerns the right of preference of the gift in subdivision " (a) " over those in " (b) " to " (d) " and " (g) " to " (o)." The position of the executors that the gift under " (a) " is entitled to preference is primarily predicated upon the language contained in " (p) " which, as noted reads:

" In the event that the legacies provided under Items ' (b) ' to ' (o),' inclusive of this paragraph exceed one-half of my net estate * * * then and in that event each of said legacies shall abate proportionately." They argue therefrom that the gift under " (a) " having been omitted from this direction for abatement, is entitled to a preference. The learned special guardian, however, finds difficulty with the assumption that the gifts contained in subdivisions " (a) " to " (o)," inclusive, exceeded one-half; in other words, that the court should substitute " (a) " for " (b) " in the foregoing quotation. Such a course appears to the court to be unjustifiable. Unquestionably it possesses some authority to delete or substitute words in a will. (*Matter of Gallien*, 247 N. Y. 195, 200; *Leggett* v. *Stevens*, 185 id. 70, 77; *Matter of Barr*, 233 App. Div. 290, 293; *Matter of Kenny*, 224 id. 152, 157; affd., 250 N. Y. 594; *Nolan* v. *Nolan*, 169 App. Div. 372, 374; *Williams* v. *Petit*, 138 id. 394, 396.) The authorities are, however, uniform to the effect that this authority is exercisable only in aid of the testator's dispositive intent (See authorities above cited, also *Matter of Vowers*, 113 N. Y. 569, 572; *Eidt* v. *Eidt*, 203 id. 325, 328), and that it cannot be done where the effect of such action would amount in substance to the making of a new will. (*Matter of Kennedy*, 149 Misc. 188, 189; *Matter of Hopner*, 148 id. 748, 752; *Matter of Howells*, 145 id. 557, 559.)

The present will gives internal evidence of meticulous care in preparation and considerably more than the average ability on the part of the draftsman. An error in beginning an enumeration with " b " when " a " was actually intended would, indeed, be most unusual, so exceptional, in fact as to excite grave suspicion that the language inserted was deliberate and not the result of mistake or inadvertence. By what right may the court assume that the testator when he executed the will on August 3, 1933, felt any assurance that his net estate, when death should ultimately overtake him, would total $100,000? If it did not, then the only assets available for solution of the gifts made in item " fifth " would be less than the $50,000 which he had bequeathed by subdivisions " (b) " to " (o)," inclusive. It is not inconceivable that he may have been willing that all gifts including that under " (a) "

should abate proportionately if the assets available for solution should exceed $50,000, but wished to provide a fixed irreducible minimum for the trust for his nephew, realizing that in any event the principal thereof would go to swell the abated gifts upon the death of the nephew.

Certainly the direction as contained in the will gives a clear and workable direction and it is not within the province of the court to declare that some other plan of disposition would have been better. In the given situation, namely, that the half of the estate devolving pursuant to item " fifth " was less than $50,000, abatement of the legacies under subdivisions " (b) " to " (o)," exclusive of " (e) " which was excepted by the codicil, will take place. A preference by implication is accorded to the gift under " (a)." This is what the testator said and it should be effectuated. If, however, as will apparently prove to be the fact, the assets devolving pursuant to item " fifth " do exceed $50,000 in value, any abatement must be borne *pro rata* by the bequests from " (a) " to " (o)," inclusive, exclusive of " (e)," since in that event the condition upon which the direction for preference is predicated will have failed of fulfillment with the result that it becomes inoperative.

If any abatement in the legacies under subdivisions " (b) " to " (o) " should become necessary, the principal of the trust directed by " (a) " to be erected, will upon the death of the life beneficiary be used to supply the deficiency. (*Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339, 345; *Matter of Smallman*, 138 Misc. 889, 913.)

The sole remaining question concerns the claim of the purchasers of the decedent's business to reimbursement from the estate of the $624.71 of corporate franchise taxes which were assessed for the years 1934 and 1935. The claim is predicated upon an alleged representation by the decedent that all taxes of the corporation had been paid. The stipulation of facts which has been submitted in lieu of testimonial proof fails to substantiate this esssential allegation. On the contrary, it appears therefrom that the objectors had all been in the employ of the concern for considerable periods of time, that two out of three of their number had been directors thereof for at least five years previously and that one of them had been in charge of the books of the company for a decade before the decedent died. The transaction of sale was predicated upon a statement of the financial status of the corporation prepared and furnished by the objectors themselves and the price paid was nearly $800 less than the demonstrated net worth of the corporation.

In view of these stipulated facts, there is no possible basis for any assertion that the claimants were misled as to the pertinent

facts. They may have misunderstood the law applicable to these facts, but this, if so, does not supply them with any just cause of complaint at least in the absence of a demonstration of justifiable reliance upon a representation to the contrary. The objection is accordingly dismissed.

Enter decree on notice in conformity herewith.