In the Matter of the Judicial Settlement of the Account of Proceedings of CITY BANK FARMERS TRUST COMPANY, Formerly Known as THE FARMERS' LOAN AND TRUST COMPANY, as Trustee under the Last Will and Testament of WILLIAM J. SMITH, Deceased, and of the Application for a Judicial Construction of Said Will.

EDWIN P. HUME and ESTHER L. HUME DAKIN, Appellants; CITY BANK FARMERS TRUST COMPANY, etc., as Trustee, etc., JENNIE MAY TAYLOR and FREDERICK G. SCHMIDT, Special Guardian, Respondents.

Second Department, March 30, 1942.

*Karl W. Kirchwey* [*Joseph M. Kaufman* with him on the brief], for the appellants.

*Frederick G. Schmidt*, respondent, in person.

PER CURIAM. A reading of the entire will discloses that it was the intent of the testator that there should be but one trust for the benefit of Ida E. Hume, and that in the event Elizabeth Lyon, Sarah J. Cogswell and Esther A. Lyon predeceased Ida E. Hume, the property in those trusts should become part of the single trust set up for Ida E. Hume. The three individuals named predeceased Ida E. Hume and the principal of their respective trusts became part of the trust for Ida E. Hume. The corpus of this enlarged trust passes to Ida E. Hume's descendants by reading the word " the " into the language which disposes of the principal of the other three trusts in the event that the individuals concerned predeceased Ida E. Hume. This would result in the next to the last paragraph in paragraph " Seventh " of the will reading " Upon the death of [three named persons] or any of them, the principal of the trust so set apart for each or any of them shall be held by my said Executor in [*the*] trust for Mrs. Ida E. Hume, * * *." This may be done under settled authority to effectuate the testator's intention, evidenced in express language in the will, and to avoid disinherison. (*Matter of Miner*, 146 N. Y. 121; *Matter of Barr*, 233 App. Div. 290; affd., 258 N. Y. 592.)

Moreover, and apart from the principle thus invoked, it appears that the testator's primary purpose was to give the property involved to the descendants of Ida E. Hume after she had the use or income thereof during her life. By express language the testator gave to Ida E. Hume's descendants the principal of so much of the property involved as concerned the group of three to whom the income was given during their lives and before Ida E. Hume was to enjoy such income. This involved about three-fourths of the entire corpus of the eventual fund which later was to become available to Ida E. Hume. The entire will discloses an intent that the principal of the fourth part originally segregated for Ida E. Hume should likewise go to Ida E. Hume's children as a matter of necessary implication. This view is in accord with the rule " to devise an estate by implication, there must be such a strong probability of an intention to give one, that the contrary cannot be supposed." (*Post* v. *Hover*, 33 N. Y. 593, 599; *Matter of Selner*, 261 App. Div. 618, 622; affd., 287 N. Y. 664.) There is here more

than a " strong probability " since there is disclosed an intention not to die intestate as to any property. Those who would otherwise take in the event of intestacy were nominal legatees, the whereabouts of one of whom is unknown and the other is dead. This manner of express mention of them excludes the idea that they were to take by intestacy. The express provision gives three-fourths of the corpus (reading the quoted language without the word " the ") to Ida E. Hume's children, which part of the corpus was less likely to be so given than the corpus of their mother's original one-fourth fragment (*Matter of Miner, supra*), and strongly reveals that reading in the word " the " effects the testator's purpose, readily implied from the entire testament (*Matter of Barr, supra*), and avoids property going to two individuals or their descendants, if ascertainable, whom the testator, in effect, pointedly excluded. As was said by CARDOZO, Ch. J., in *Matter of Gallien* (247 N. Y. 195, 200), " We cut an avenue of escape from consequences so unreasonable, we might even say so ludicrous, that a sensible testator cannot be supposed to have intended or approved them." And what he further said (p. 202) is equally applicable: " Nothing is done here save what we may safely presume that the testator would have wished the court to do   *   *   *."

The decree, in so far as appealed from, should be reversed on the law and the facts, with costs to each party filing a brief, payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of a new decree containing, among others, a provision that the entire residuary estate was validly disposed of by the will and passed to the appellants upon the death of Ida E. Hume.

The appeal from the order denying reargument should be dismissed, without costs.

CARSWELL, JOHNSTON and CLOSE, JJ., concur; TAYLOR, J., with whom HAGARTY, J., concurs, dissents in part, with opinion.

TAYLOR, J. (dissenting).   I concur with the majority in so far as the dismissal of the appeal from the order denying reargument is concerned. I dissent, however, in that phase which has to do with the construction of the decedent's will, and vote to modify on the law and facts the provisions of the decree under the heading " Found, Adjudged and Determined " (I) by substituting " five-sevenths " for " four-sevenths " in the decretal paragraphs thereof numbered " 3 " and " 4;" and (II) by substituting " two-sevenths " for " three-sevenths " in the decretal paragraph thereof numbered " 5." As thus modified, and in so far as appealed from, I vote to affirm the decree, with costs to all parties filing separate briefs, payable out of the estate.

In my opinion the testator died intestate as to the remainder of the share of the residue of which Ida E. Hume was given the income for life by the provisions of paragraph " Seventh " of the will. It was testator's manifest intention that there should be separate trusts for Ida E. Hume as distinguished from a single one for her benefit. One of these trusts was in the so-called fourth part of the residue and the others severally in the shares of the residue of the three other residuary beneficiaries, Elizabeth Lyon, Sarah J. Cogswell and Esther A. Lyon, to the income of each of which shares Ida E. Hume became entitled for her life because of the prior death of the given beneficiary, which death in each case occurred also before the death of the testator.

The clause of the will in which the interpolation of the word " the " is made by the majority ruling reads, with such interpolation indicated, as follows:

" Upon the death of Mrs. Elizabeth Lyon, Mrs. Sarah J. Cogswell and Mrs. Esther A. Lyon, or any of them, the principal of the trust so set apart for each or any of them shall be held by my said Executor in [the] trust for Mrs. Ida E. Hume, and the income derived therefrom shall be paid to her during her life, and upon her death the principal thereof, together with all accumulated and accrued interest, shall be paid to the children or descendants of any deceased child or children of Mrs. Ida E. Hume when they severally arrive at the age of twenty-one years. The income, in the meantime, shall be used by their Testamentary Guardian hereinafter appointed, for their support, maintenance and education."

The interpolation of the word " the," as above, in the language which disposes of the principal of the trusts respectively for the benefit of Elizabeth Lyon, Sarah J. Cogswell and Esther A. Lyon, is unwarranted. It changes the plain meaning of an unambiguous clause of the will and makes it refer to an enlarged single trust for the benefit of Mrs. Hume, which single trust was never contemplated by the testator and is wholly unwarranted by the express terms of the will and the implications thereof. In effect this interpolation by judicial fiat makes a new will for the testator, contrary to law. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 92; *Stewart* v. *Stewart*, 205 App. Div. 587, 589; *First Nat. Bank & Trust Co.* v. *Palmer*, 261 N. Y. 13, 17; *Dreyer* v. *Reisman*, 202 id. 476, 479, 480.) This is not a case where the context of the clause in question requires the interpolation. (Cf. *Matter of Barr*, 233 App. Div. 290.) " We transpose words or names or clauses only for the purpose of giving grammatical expression to an intention that otherwise appears from the instrument itself. The courts cannot rewrite instruments; their function is confined to construction. None the

less, when an intention clearly appears on the face of the instrument, the courts should not defeat that intention by any rules of grammar or rhetoric." (*First Nat. Bank & Trust Co.* v. *Palmer, supra.*) " Courts have no power * * * to construct a will where none has in fact been made, nor to import into a will new provisions which are designed to create a testamentary disposition which is neither expressed nor necessarily to be implied." (*Dreyer* v. *Reisman, supra,* at p. 480.) Here no intention appears, by implication, to give the remainder of the Ida E. Hume share, concededly not expressly disposed of in the will, to the appellants upon her death.

The appellants, saving their point as to the construction for which they contend, assert that the surrogate erred in allocating only four-sevenths of the whole residue of $71,995.47 as of November 21, 1922, when the trusts became effective, to the three trusts other than the one for Mrs. Hume, and that he should have allocated five-sevenths to those trusts, with the result that the appellants should have received $10,285.06, the value of a seventh, in addition to the $41,140.27 which they were awarded by the surrogate's decree. Appellants assert that the formula for determining the value of the property in these trusts is to take the recognized and customary rate of income derivable from a trust and to capitalize the property on that income; also that the customary rate is four per cent. They rely upon several authorities, chief of which is *Matter of Schuster* (257 App. Div. 55), in which we fixed that rate as representing the amount of income which presumably would have been earned by a trust if the real property had been sold as directed by the testator in August of 1924. That would apply, in my opinion, to the trusts which became effective in November, 1922. I am of opinion, therefore, that the contention of the appellants in relation to such allocation should be sustained, with the result above indicated.

HAGARTY, J., concurs with TAYLOR, J.

Decree of the Westchester County Surrogate's Court, in so far as appealed from, reversed on the law and the facts, with costs to each party filing a brief, payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of a new decree containing, among others, a provision that the entire residuary estate was validly disposed of by the will and passed to the appellants upon the death of Ida E. Hume.

Appeal from the order denying reargument dismissed, without costs.